[Cite as *State v. Klein*, 2013-Ohio-2387.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                    CASE NO.  14-12-09

      v.

TAMMY M. KLEIN,                    O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Union County Common Pleas Court
Trial Court No. 11-CR-0163

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision:   June 10, 2013

APPEARANCES:

    *Alison Boggs* **for Appellant**

    *Terry L. Hord*  **for Appellee**

**ROGERS, J.**

{¶1} Defendant-Appellant, Tammy Klein, appeals the judgment of the Union County Court of Common Pleas finding her guilty of complicity to commit aggravated robbery, complicity to commit theft, complicity to commit kidnapping, possession of a controlled substance, tampering with evidence, and sentencing her to an aggregate prison term of 18 years. On appeal, Klein contends that the following errors occurred throughout the course of the matter: (1) she received ineffective assistance of counsel; (2) the verdicts on Counts One through Four were against the manifest weight of the evidence; (3) the State committed prosecutorial misconduct during closing argument; (4) the trial court erred when it did not grant her Crim.R. 29 motion for acquittal at the end of the State's case-in-chief; and (5) the trial court erred when it imposed consecutive sentences. Based on the following, we affirm in part and reverse in part the trial court's judgment.

{¶2} On March 17, 2010, Dave's Pharmacy, located at 411 West Fifth Street in Marysville, was robbed by an armed assailant. The assailant, later identified as Amanda Freed, stole numerous pills containing oxycodone. Freed was later arrested for an unrelated offense. While in custody for the unrelated offense, Freed voluntarily confessed that she robbed Dave's Pharmacy, and that Klein, her aunt, was involved in the robbery.

{¶3} In October 2011, the Union County Grand Jury returned a five count indictment against Klein, charging her as follows: Count One, complicity to commit aggravated robbery in violation of R.C. 2911.01(A)(1), a felony of the first degree, with a firearm specification under R.C. 2941.145(A) and a forfeiture specification under R.C. 2941.1417(A); Count Two, complicity to commit theft of a dangerous drug in violation of R.C. 2913.02(A)(4), (B)(6), a felony of the fourth degree, with a firearm specification under R.C. 2941.145(A) and a forfeiture specification under R.C. 2941.1417(A); Count Three, complicity to commit kidnapping in violation of R.C. 2905.01(A)(2), a felony of the first degree, with a firearm specification under R.C. 2941.145(A); Count Four, drug possession in violation of R.C. 2925.11(A), a felony of the second degree, with a forfeiture specification under R.C. 2941.1417(A); and Count Five, tampering with evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree, with a forfeiture specification under R.C. 2941.1417(A).

{¶4} A jury trial was held in this matter on January 11 and 12, 2012. The following relevant evidence was adduced during the State's case-in-chief.

{¶5} According to Freed, she and Klein were together at Klein's residence on the morning of March 17, 2010. During that time, she and Klein discussed a mutual debt they owed to her then-boyfriend, Roscoe, for cocaine that he had

advanced to them. Freed testified that Klein suggested that they rob Dave's Pharmacy and use the proceeds to settle their debt with Roscoe.

{¶6} Freed explained that in preparation for the robbery, Klein showed her an aerial view of Dave's Pharmacy and described what the pharmacy looked like inside. Klein also provided her with clothing and a gun to use during the robbery. However, Freed recalled that she and Klein agreed to "show [the gun] to scare somebody, but never to use it." Trial Tr., Vol. I, p. 97. Freed also testified that she did not have access to a phone on the day of the robbery.

{¶7} On direct examination, Freed testified that she and Klein were the only individuals involved in the robbery, and that she and Klein left Klein's residence to commit the robbery at approximately 5:00 p.m. During cross-examination, however, Freed testified that Roscoe was also involved in the robbery.

{¶8} Freed testified that before she and Klein left Klein's residence to commit the robbery, she and Klein both did heroin. When asked whether the heroin impairs her memory, Freed responded that "[s]ome things but not something this big. Not - - maybe some little details, but I remember most of what happened that day." Trial Tr., Vol. I, p. 112. Freed indicated that Klein drove a maroon Dodge pickup truck during the robbery. Freed recalled that she and Klein drove to a residential area located behind the pharmacy. With the assistance of an

aerial photograph of the area surrounding Dave's Pharmacy, Freed indicated that Klein parked the truck in front of a residence located at 426 West Sixth Street. On direct examination, Freed explained that Klein stayed in the truck, which remained running, while she proceeded from the truck through an alley and across several yards to Dave's Pharmacy. On cross-examination, however, Freed testified that Roscoe was also in the truck and stayed there during the robbery.

{¶9} Karen Smith, who resides at 426 West Sixth Street in Marysville, testified that on March 17, 2010, she arrived home sometime between 5:00 p.m. and 6:00 p.m. Smith explained that upon her arrival she noticed a maroon pickup truck parked along the street in front of her residence. Smith testified that she had never seen that truck parked in front of her residence before and thought the circumstances were unusual. Smith recalled that the truck was running and that there was one individual sitting in the truck's driver seat. Smith further recalled that the individual had a small build and that the individual's hair was tied up in a barrette. Given her observations, Smith testified that she believed the individual in the truck was a female. Though Smith conceded that she did not continually observe the truck, she indicated that the truck was parked in front of her residence for approximately 10 minutes, and that she never witnessed anyone climb out of or into the truck.

{¶10} Turning back to the robbery, Freed testified that upon entering the pharmacy she feigned interest in some foot cream. Freed explained that she requested assistance from one of the pharmacy's employee's, Crystal Reisinger. During her interaction with Reisinger, Freed pulled up her shirt to reveal a gun tucked in her waistband. Upon displaying the gun, Freed demanded that Reisinger give her all of the pharmacy's OxyContin. Reisinger complied with her request and gave her four bottles containing OxyContin. Immediately thereafter, Freed fled back to the truck, following the same route she took to the pharmacy.

{¶11} Freed testified that as soon as she left the pharmacy she heard sirens. Freed climbed into Klein's truck through the back door and got down on the floor as Klein drove her to Johnstown, Ohio. Freed explained that during the ride Klein instructed her to dump the pills into a plastic bag. Also during the ride, they stopped at a gas station where she discarded the clothes used during the robbery, the gun, and the empty pill bottles into a dumpster. Freed testified that she and Klein gave most of the OxyContin to Roscoe, and divided the remainder between themselves.

{¶12} Reisinger's recollection of the robbery was very similar to Freed's description of what occurred. According to Reisinger, the robbery occurred at approximately 5:30 p.m. Reisinger recalled that Freed was initially interested in purchasing foot cream. However, during their conversation, Freed pulled her shirt

up to reveal a gun tucked in her waistband. Reisinger testified that she was scared and asked Freed what she wanted. Freed responded that she wanted OxyContin. Accordingly, Reisinger gathered four bottles containing OxyContin and gave them to Freed.

{¶13} Several hours after the robbery, David Burke, a pharmacist and the owner of Dave's Pharmacy, arrived at the pharmacy. Burke testified that by law he is required to maintain records of all controlled substances in his pharmacy's possession. Burke explained that his pharmacy continually updates the record of all controlled substances, including oxycodone, which he identified as a schedule two controlled substance. Burke testified that shortly after arriving at the pharmacy, he took an inventory of the stolen items. Burke indicated that 130 pills of 10 milligram OxyContin were stolen, and that the bulk amount of 10 milligram OxyContin equates to 45 pills.[1] Next, Burke indicated that 25 pills of 20 milligram OxyContin were stolen, and that the bulk amount of 20 milligram OxyContin equates to 23 pills. Finally, Burke indicated that 30 pills of 40 milligram OxyContin were stolen, and that the bulk amount of 40 milligram OxyContin equates to 12 pills.

{¶14} During the Defendant's case-in-chief, the following relevant evidence was adduced.

---

[1] This court has observed that "OxyContin is the trade name for Oxycodone Hydrochloride controlled-release pills, an opioid analgesic drug." *State v. Ward*, 3d Dist. No. 13-11-17, 2012-Ohio-988, fn. 2.

{¶15} Throughout her testimony, Klein denied any involvement in the robbery of Dave's Pharmacy. Klein testified that she routinely filled her prescriptions at Dave's Pharmacy, and that Freed was aware of this fact. According to Klein, she was being prescribed OxyContin at the time of the robbery. Klein also admitted that she had done heroin with Freed several times, but denied doing heroin with Freed on March 17, 2010.

{¶16} Klein, her husband, Timothy Klein ("Timothy Sr."), and her son, Timothy Klein II ("Timothy Jr."), each testified that Freed was not at their residence on March 17, 2010. Instead, each testified that Klein was at home that day when she received a phone call in the afternoon from Freed. Klein explained that Freed asked for a ride from the residence of Roscoe's sister, which, Freed said was located on West Sixth Street. Klein testified that Freed was not outside when she arrived at what Freed purported to be the residence of Roscoe's sister, so she parked her maroon Dodge pickup truck along West Sixth Street and waited for Freed to arrive.

{¶17} Klein testified that she waited in her truck for approximately 15 minutes before Freed arrived. Klein explained that Freed jumped in the back seat of her truck and got down on the floor. According to Klein, Freed indicated that she was lying on the floor because she had too much to drink. Klein testified that immediately after Freed climbed into her truck she heard sirens coming from

behind her vehicle and that she observed several police vehicles driving down West Sixth Street towards her truck. As a result, Klein did not immediately drive off after Freed climbed into her truck, but waited for the police vehicles to pass. According to Klein, the police vehicles never passed her truck, but instead proceeded to turn off of West Sixth Street. Upon seeing this, Klein drove off down West Sixth Street.

**{¶18}** Klein testified that Freed asked to go to a McDonald's east of Columbus, Ohio. Shortly after they left Marysville, Freed asked to stop so she could dump everything she just used to rob Dave's Pharmacy. According to Klein, this was the first time she learned of the robbery. Before they pulled over, Klein witnessed Freed dump the pills into a plastic bag. Then, Klein pulled over at a gas station off State Route 33, just south of Marysville, where she witnessed Freed discard several pill bottles, some clothing, and an airsoft gun into a dumpster. Thereafter, Klein drove Freed to her requested destination, where Roscoe had been waiting.

**{¶19}** When Klein was asked why she did not report Freed to authorities, the following exchange occurred:

> Q: After Miss Freed told you what she had done, why didn't you just kick her out of your car?
>
> A: Because [State Route] 33 is a lonely place. And she's got two - - well, at the time, [a] two and a half year old son * * * .

Q: Speak up a little bit.

A: I didn't want to see her go to jail and my - - her son get left without a mother.

* * *

Q: Why didn't you call the police?

A: [Bec]ause she's my niece.

Q: Didn't want to see her get in trouble?

A: No. Trial Tr., Vol. II, p. 67-8.

{¶20} In addition to Klein's testimony about the events surrounding the robbery, she and her husband also testified about their airsoft guns. Timothy Sr. testified that they owned several airsoft guns at the time the robbery occurred, and that the airsoft guns look nearly identical to a real gun. Klein testified that she initially assumed Freed took one of the airsoft guns from her residence, but indicated that none of their airsoft guns were missing.

{¶21} After deliberations, the jury found Klein guilty of all five counts and their attendant specifications.

{¶22} The matter proceeded to sentencing in February 2012. During sentencing the trial court determined, based on the parties' agreement, that Counts One, Two, and Three were allied offenses of similar import and merged Counts Two and Three into Count One per the State's request. The trial court then proceeded to sentence Klein to an eight-year prison term on Count One, a

mandatory three-year prison term on the firearm specification, a mandatory five-year prison term on Count Four, and a 24-month prison term on Count Five. The trial court further ordered each prison term to be served consecutively to one another for an aggregate prison term of 18 years. In addition, the trial court ordered Klein to pay Dave's Pharmacy $480.00 in restitution, as well as all court costs, costs of prosecution, and a mandatory fine of $7,500.00.[2]

**{¶23}** It is from this judgment Klein filed this timely appeal, presenting the following assignments of error for our review.

### *Assignment of Error No. I*

**DEFENDANT-APPELLANT RECEIVED PREJUDICIALLY INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HER SIXTH AND FOURTEENTH AMENDMENT RIGHTS, AS WELL AS HER RIGHTS UNDER SECTION 10, ARTICLE I, OF THE OHIO CONSTITUTION.**

### *Assignment of Error No. II*

**THE JURY'S VERDICTS ON COUNTS ONE THROUGH FOUR ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND MUST BE REVERSED.**

### *Assignment of Error No. III*

**APPELLEE COMMITED (sic) PROSECUTORIAL MISCONDUCT IN ITS CLOSING ARGUMENTS WHEN IT ARGUED ABOUT PERSONAL KNOWLEDGE AND NOT THE FACTS OF THIS CASE.**

---

[2] Despite the jury's determination that the truck was used in the commission of all five offenses, the State elected not to pursue forfeiture and the trial court did not order the truck to be forfeited.

*Assignment of Error No. IV*

**THE TRAIL (sic) COURT ERRED IN NOT GRANTING APPELLANT'S CRIMINAL RULE 29 MOTION FOR ACQUITAL AT THE END OF THE STATE'S CASE BECAUSE THE CONVICTIONS WERE BASED ON THE UNRELIABLE, UNCORROBORATED TESTIMONY OF THE ACCOMPLICE WITH NO INDEPENDENT EVIDENCE.**

*Assignment of Error No. V*

**THE TRIAL COURT ERRED WHEN IT SENTENCED APPELLANT TO CONSECUTIVE SENTENCES.**

{¶24} Due to the nature of Klein's assignments of error, we elect to address her assignments out of order.

*Assignment of Error No. IV*

{¶25} In her fourth assignment of error, Klein contends that the trial court erred when it did not grant her motion for acquittal. Specifically, Klein argues that there was "too much contradictory testimony to main points in the case that the matter should have never gone to the jury." Appellant's Br., p. 18. We find Klein's argument's unavailing.

{¶26} Crim.R. 29(A) provides that a court must order the entry of a judgment of acquittal of a charged offense "if the evidence is insufficient to sustain a conviction of such offense[.]" However, "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been

proved beyond a reasonable doubt." *State v. Bridgeman*, 55 Ohio St.2d 261 (1978), syllabus. Thus, a motion for acquittal tests the sufficiency of the evidence. *State v. Tatum*, 3d Dist. No. 13-10-18, 2011-Ohio-3005, ¶ 43, citing *State v. Miley*, 114 Ohio App.3d 738, 742 (4th Dist. 1996).

{¶27} When an appellate court reviews a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, ¶ 47, citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), superseded by state constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89 (1997). Sufficiency is a test of adequacy, *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), and the question of whether evidence is sufficient to sustain a verdict is one of law. *State v. Robinson*, 162 Ohio St. 486 (1955), superseded by state constitutional amendment on other grounds as stated in *Smith*.

{¶28} In order to preserve the issue of sufficiency on appeal, this court has held that "[w]hen a defendant moves for acquittal at the close of the state's evidence and that motion is denied, the defendant 'waives any error which might have occurred in overruling the motion by proceeding to introduce evidence in his or her defense.' [*State v. Brown*, 90 Ohio App.3d 674, 685 (11th Dist. 1993)]. In

order to preserve a sufficiency of the evidence challenge on appeal once a defendant elects to present evidence on his behalf, the defendant must renew his Crim.R. 29 motion at the close of all the evidence." *State v. Edwards*, 3d Dist. No. 9-03-63, 2004-Ohio-4015, ¶ 6.

**{¶29}** The record reveals that Klein made her Crim.R. 29 motion at the close of the State's case-in-chief, and that the trial court denied her motion for acquittal. Thereafter, Klein proceeded to present evidence in her defense. Klein, however, did not renew her Crim.R. 29 motion at close of her case-in-chief or at the conclusion of the all the evidence. Thus, according to this court's precedent, Klein has waived all but plain error. *State v. Flory*, 3d Dist. No. 15-04-18, 2005-Ohio-2251, citing *Edwards*.

**{¶30}** However, "[w]hether a sufficiency of the evidence argument is reviewed under a prejudicial error standard or under a plain error standard is academic." *Perrysburg v. Miller*, 153 Ohio App.3d 665, 2003-Ohio-4221, ¶ 57 (6th Dist.), quoting *State v. Brown*, 2d Dist. No. 17891 (July 14, 2000). Regardless of the standard used, "'a conviction based on legally insufficient evidence constitutes a denial of due process,'" and constitutes a manifest injustice. *Thompkins*, 78 Ohio St.3d at 386-387, citing *Tibbs v. Florida*, 457 U.S. 31, 45, 102 S.Ct. 2211 (1982), and *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781

(1979). Accordingly, we will proceed to determine whether the State presented sufficient evidence to support Klein's convictions.

**{¶31}** For ease of discussion, we will address the offenses associated with Counts One, Two, and Three together, as they were found to be allied offenses of similar import, and then discuss the offenses associated with Counts Four and Five independently of each other.[3]

*Counts One, Two, & Three*

**{¶32}** With respect to Counts One, Two, and Three, Klein was charged with complicity to commit aggravated robbery in violation of R.C. 2911.01(A)(1), complicity to commit theft in violation of R.C. 2913.02(A)(4), and complicity to commit kidnapping in violation of R.C. 2905.01(A)(2). R.C. 2923.03, Ohio's complicity statute, provides, in relevant part:

> (A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
>
> * * *
>
> (2) Aid or abet another in committing the offense[.]

Division (A)(1) of R.C. 2911.01, Ohio's aggravated robbery statute, provides:

> (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing

---

[3] As previously mentioned, each count included a forfeiture specification, seeking forfeiture of the vehicle Klein allegedly used during the commission of the charged offenses. While the jury found that the vehicle was used in the commission of each charged offense, the State elected not to pursue forfeiture of the vehicle and the trial court did not order forfeiture. Since the vehicle was not ordered to be forfeited, there is no need for this court to determine whether the State presented sufficient evidence to support the jury's finding that the vehicle was used in the commission of each charged offense.

immediately after the attempt or offense, shall do any of the following:

(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]

Division (A)(4) and (B)(6) of R.C. 2913.02, Ohio's theft statute, provides:

(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

* * *

(4) By threat[.]

* * *

(B)(6) If the property stolen is any dangerous drug, a violation of this section is theft of drugs, a felony of the fourth degree, or, if the offender previously has been convicted of a felony drug abuse offense, a felony of the third degree.[4]

And, finally, division (A)(2) of R.C. 2905.01, Ohio's kidnapping statute, provides:

(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

(2) To facilitate the commission of any felony or flight thereafter[.]

Bearing this statutory language in mind, we turn our attention to the evidence presented at trial.

---

[4] "Dangerous drug," as used in R.C. 2913.02(B)(6), is defined under R.C. 4729.01(F).

{¶33} The record reveals that the State presented sufficient evidence to overcome Klein's motion for acquittal with respect to Counts One, Two, and Three. Freed testified that she and Klein planned to rob Dave's Pharmacy, and that Klein aided the robbery by providing her with information concerning the pharmacy's layout, materials to facilitate the robbery, and transportation to and from Dave's Pharmacy. Freed testified that during the robbery she displayed the butt of a gun tucked in her waistband to a pharmacy employee and demanded OxyContin, which, as previously mentioned, contains oxycodone. Similarly, Reisinger testified that the assailant showed her what appeared to be a gun tucked in her waistband and demanded OxyContin. Reisinger testified that she retrieved four bottles containing OxyContin and gave them to the assailant, who absconded with the same. Freed testified that upon receiving the bottles of OxyContin she fled the pharmacy, located on Fifth Street, and ran to West Sixth Street, where Klein was waiting in a maroon Dodge pickup truck. Smith, who resided on West Sixth Street on the day of the robbery, testified that she observed a maroon pickup truck parked in front of her residence around the time the robbery would have occurred. Smith testified that the truck was idling and that she observed one person in the truck, who appeared to be a woman of small stature with her hair tied up with a barrette. Construing this evidence in a light most favorable to the prosecution, we find that there was sufficient evidence for a trier of fact to find,

beyond a reasonable doubt, that the State proved the essential elements of complicity to commit aggravated robbery, complicity to commit theft, and complicity to commit kidnapping.

*Firearm Specifications for Counts One, Two, & Three*

**{¶34}** With respect to Counts One, Two, and Three, Klein was also charged with a firearm specification in violation of R.C. 2941.145(A), which provides, in relevant part:

> Imposition of a three-year mandatory prison term upon an offender under division (B)(1)(a) of section 2929.14 of the Revised Code is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense.

**{¶35}** For this specification to apply, the State must present sufficient evidence that the offender possessed a firearm, which is defined as follows:

> "Firearm" means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. "Firearm" includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable. R.C. 2923.11(B)(1).

"When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the

representations and actions of the individual exercising control over the firearm." R.C. 2923.11(B)(2).

{¶36} The record reveals that the State presented sufficient evidence to overcome Klein's motion for acquittal with respect to the firearm specifications. Freed repeatedly testified that she used a "gun" during the robbery. *E.g.*, Trial Tr., Vol. I, p. 90, 96, 98. While Freed never identified what type of gun it was, she did testify that she and Klein agreed to "show [the gun] to scare somebody, but never to use it." *Id.* at p. 97. This testimony can reasonably be interpreted to suggest two things. First, use of the "gun" to scare someone suggests that an individual would recognize the object as a gun capable of inflicting bodily harm or death. Indeed, Reisinger testified that she was scared when Freed displayed the gun. When the State sought to clarify what Reisinger observed in Freed's waistband, the following exchange occurred:

Q: When you say she had a gun, what do you mean by a gun?

A: A pistol.

Q: Something that would - - could shoot you?

A: Yes. *Id.* at p. 134.

Second, the agreement never to use the "gun" can reasonably be interpreted to suggest operability, as well as a desire to not hurt anyone during the robbery. Construing this evidence in a light most favorable to the prosecution, we find that

there was sufficient evidence for a trier of fact to find, beyond a reasonable doubt, that the State proved that Freed used a firearm while committing the offenses associated with Counts One, Two, and Three.

{¶37} In so finding, we recognize that there is some dispute as to whether Freed's use of the term "gun" throughout her testimony indicates that she possessed a firearm, pursuant to R.C. 2923.11(B)(1), or whether it was an airsoft gun.[5] Since this dispute involves a weighing of the evidence, we will address this issue under Klein's second assignment of error, which asserts that the verdicts on Counts One through Four were against the manifest weight of the evidence.

### Count Four

{¶38} With respect to Count Four, Klein was charged with drug possession in violation of R.C. 2925.11(A). Specifically, the language of the indictment[6] reveals that Klein was charged with violating R.C. 2925.11(A), (C)(1)(c), which provides:

> (A) No person shall knowingly obtain, possess, or use a controlled substance.
>
> * * *

---

[5] We note that during closing argument the State arguably concedes that Freed used an airsoft gun during the robbery. Trial Tr., Vol. II, p. 109-10. However, this argument is not evidence, and therefore we are precluded from considering it when addressing Klein's sufficiency and manifest weight assignments of error. *State v. Frazier*, 73 Ohio St.3d 323, 338 (1995).

[6] With respect to Count Four, the indictment charged Klein as follows: "[On or about March 17, 2010, Tammy M. Klein,] did knowingly obtain, possess, or use a controlled substance and the drug involved in the violation is a compound, mixture, preparation, or substance included in Schedule I or II, to wit: oxycodone, a Schedule II drug, and the amount of the drug involved equals or exceeds five times the bulk amount but is less than fifty times the bulk amount." (Docket No. 1, p. 3).

-20-

(C)  Whoever violates division (A) of this section is guilty of one of the following:

(1)  If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, cocaine, L.S.D., heroin, and hashish, whoever violates division (A) of this section is guilty of aggravated possession of drugs. The penalty for the offense shall be determined as follows:

* * *

(c) If the amount of the drug involved equals or exceeds five times the bulk amount but is less than fifty times the bulk amount, aggravated possession of drugs is a felony of the second degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the second degree.[7]

Bearing this statutory language in mind, we turn our attention to the evidence presented at trial.

{¶39} The record reveals that the State presented sufficient evidence to overcome Klein's motion for acquittal with respect to Count Four.  Freed testified that she demanded OxyContin from a pharmacy employee and received four bottles purportedly containing OxyContin.  Similarly, Reisinger testified that she gave the assailant four bottles of OxyContin.

{¶40} Burke, a pharmacist who owns and operates Dave's Pharmacy, testified that the pharmacy is required, by law, to maintain a record of all controlled substances in its possession, and that record is updated whenever a pill

---

[7] This was the statutory language in effect at the time the offense occurred.

containing a control substance leaves the pharmacy's control. Burke testified that he took an inventory of the pills taken during the robbery on the same day the robbery occurred. Burke testified that 130 pills of 10 milligram OxyContin, which contains oxycodone, were stolen during the robbery. Burke testified that the bulk amount of 10 milligram OxyContin equates to 45 pills of the same. Next, Burke testified that 25 pills of 20 milligram OxyContin, which contains oxycodone, were stolen during the robbery. Burke testified that the bulk amount of 20 milligram OxyContin equates to 23 pills of the same. Finally, Burke testified that 30 pills of 40 milligram OxyContin, which contains oxycodone, were stolen during the robbery. Burke testified that the bulk amount of 40 milligram OxyContin equates to 12 pills of the same. Added together, an amount of oxycodone exceeding five times the bulk amount was stolen during the robbery.

{¶41} In addition, Freed testified that she fled the pharmacy and got into a truck driven by Klein. Freed testified that Klein instructed her to dump the OxyContin into a plastic bag. Freed further testified that she gave most of the pills to Roscoe, but that she and Klein divided the remaining pills among themselves. Construing this evidence in a light most favorable to the prosecution, we find that there was sufficient evidence for a trier of fact to find, beyond a reasonable doubt, that the State proved the essential elements of drug possession.

*Count Five*

**{¶42}** With respect to Count Five, Klein was charged with tampering with evidence in violation of R.C. 2921.12(A)(1), which provides:

> (A)  No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

> (1)  Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]

Bearing this statutory language in mind, we turn our attention to the evidence presented at trial.

**{¶43}** The record reveals that the State presented sufficient evidence to overcome Klein's motion for acquittal with respect to Count Five.  Freed testified that she and Klein discarded the clothes and gun used during the robbery, as well as the pill bottles, into a gas station dumpster.  Though Klein denied taking part in discarding the items described by Freed, she did testify that she observed Freed discard clothes, an airsoft gun, and pill bottles into a gas station dumpster.  Despite Klein's testimony to the contrary, and construing this evidence in a light most favorable to the prosecution, we find that there was sufficient evidence for a trier of fact to find, beyond a reasonable doubt, that the State proved the essential elements of tampering with evidence.

**{¶44}** In sum, we find that the State presented sufficient evidence for a trier of fact to find, beyond a reasonable doubt, that it proved the essential elements of all the charged offenses and specifications.

**{¶45}** Accordingly, we overrule Klein's fourth assignment of error.

*Assignment of Error No. II*

**{¶46}** In her second assignment of error, Klein contends that the verdicts on Counts One through Four were against the manifest weight of the evidence. Specifically, Klein maintains that Freed's testimony was replete with contradictions. In light of these contradictions, Klein asserts that the jury lost its way when it found Freed's version of events to be more credible, and consequently lost its way in finding her guilty on Counts One through Four because Freed's testimony was essential in proving the State's case. In addition, Klein argues that her finding of guilt with respect to complicity to commit aggravated robbery was against the manifest weight because the evidence weighed against a finding that the gun Freed used was a deadly weapon. We find Klein's argument's unavailing.

**{¶47}** When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the fact finder clearly

lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387, superseded by constitutional amendment on other grounds as stated by *Smith*, 80 Ohio St.3d 89, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. *Id.*

{¶48} We agree that Freed's testimony was essential in establishing Klein's guilt. Aside from Freed's testimony, much of the evidence heard by the jury corroborated both Klein's and Freed's version of events. As such, the State's case, in large part, hinged upon Freed's credibility.

{¶49} In challenging the jury's determination concerning Freed's credibility, Klein focuses on two instances where Freed allegedly offered contradictory testimony. The first instance occurred with respect to who was involved in the robbery. On direct examination, Freed testified that only she and Klein were involved in the robbery. On cross-examination, however, Freed testified that Roscoe was also present during the robbery, and was waiting in the truck with Klein. The second instance occurred with respect to who was supposed to commit the robbery. Klein notes that throughout her testimony Freed maintained that she and Klein had planned the robbery together. When asked why she was selected to rob the pharmacy, Freed responded that she had to fill in for

"somebody else" because "they hurt themselves." Trial Tr., Vol. I, p. 112. When questioned further about who was hurt, Freed responded that it was Klein. Klein maintains that Freed's failure to initially identify Klein as the hurt individual contradicts her testimony that the she and Klein had planned the robbery. Klein reasons that had the robbery been planned Freed would have initially identified Klein as the hurt individual, and not "somebody else."

{¶50} Although Freed did, at times, offer contradictory testimony, we cannot conclude that the jury lost its way when it found Freed to be more credible. First, we are not convinced that the contradictions highlighted by Klein render Freed's testimony incredible. While Freed did offer contradictory testimony concerning who was involved in the robbery, she always maintained that the Klein was involved. As for Klein's assertion that Freed contradicted her testimony that the robbery was planned, we are not convinced that Freed contradicted herself. At trial, the following exchange occurred:

> Q: Were you ever given a reason why you should be the one to do the robbery, i.e., go into Dave's Pharmacy?
>
> A: Yes. It was supposed to be somebody else, but they hurt themselves.
>
> Q: So you filled in for somebody else?
>
> A: Yes.
>
> Q: When did it become necessary that you fill in for someone else?

A:  Pretty much at the last minute.

Q:  At the last minute, who was it that got hurt?

A:  Tammy.

Q:  Tammy Klein, your aunt?

A:  Yes.  Trial Tr., Vol. I, p. 112.

Considering the following exchange, we fail to see how Freed's responses contradict her testimony that she planned the robbery with Klein.  While we can speculate, as Klein has done, why Freed did not initially identify Klein, the first question did not require Freed to identify the hurt individual.  When Freed was finally asked to identify the hurt individual, she responded that it was Klein.  Given the foregoing exchange and the context in which it occurred, we find that Freed did not offer testimony that contradicted her repeated assertions that she and Klein planned the robbery.

{¶51} Aside from the portions of Freed's testimony identified by Klein as contradictory, much of Freed's testimony was consistent.  Furthermore, as previously mentioned, large portions of Freed's testimony were corroborated by other witnesses, thus bolstering her credibility.  Since the jury was in the best position to weigh witness credibility, *State v. Dickinson*, 3d Dist. No. 11-08-08, 2009-Ohio-2099, ¶ 45, citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77

(1984), we cannot conclude that the jury lost its way when it found Freed's testimony to be more credible than Klein's testimony.

{¶52} Further, we cannot conclude that the jury's finding concerning Freed's use of a deadly weapon was against the manifest weight of the evidence. Klein maintains that the evidence overwhelmingly demonstrates that the gun Freed used during the robbery was an airsoft gun, and that the same is not a deadly weapon pursuant to R.C. 2923.11(A). We, however, are not convinced.

{¶53} The only evidence that Freed used an airsoft gun during the robbery occurred during Klein's testimony, wherein she testified that immediately following the robbery she observed Freed discard an airsoft gun into a dumpster. This is not overwhelming evidence that Freed used an airsoft gun as opposed to a gun capable of causing death. Instead, the greater weight of the evidence supports the jury's finding that the gun Freed used during the robbery was a deadly weapon. As previously mentioned, Freed consistently referred to the object tucked in her waistband as a gun, never an airsoft gun. Although Freed did not describe the gun, her testimony, particularly her agreement with Klein to never use the gun, can reasonably be viewed to infer that the gun was both operable and capable of inflicting bodily harm, if not death. Additionally, Reisinger testified that she became fearful when she observed the gun tucked in Freed's waistband. When asked to describe what the gun looked like Reisinger testified that it looked

like a "pistol" that could shoot her. Trial Tr., Vol. I, p. 134. When Freed's and Reisinger's testimony is viewed together, it is reasonable to infer that Freed possessed a gun, or firearm, capable of inflicting death. Consequently, we cannot conclude that the jury lost its way when it found that Freed used a deadly weapon during the robbery.

{¶54} Given the foregoing, we find that the jury did not lose its way when it convicted Klein on Counts One through Four. Freed's testimony, which the jury found to be more credible, accounted for much of the evidence necessary to convict Klein on Count's One through Four. In particular, Freed's testimony, along with Smith's, Reisinger's, and Burke's testimony established that Freed committed aggravated robbery, theft, kidnapping, and drug possession, and that Klein was either complicit in or directly committed these offenses. In spite of the evidence presented in support of Klein's defense, we are not convinced that the evidence weighs heavily against Klein's convictions on Counts One through Four. Accordingly, we find that the jury's verdicts on Counts One through Four were not against the manifest weight of the evidence.

{¶55} Accordingly, we overrule Klein's second assignment of error.

*Assignment of Error No. III*

{¶56} In her third assignment of error, Klein contends that prosecutorial misconduct occurred during the State's closing argument. Specifically, Klein

argues that the prosecutor improperly relied on his personal knowledge to suggest that Klein's explanation concerning her route from Dave's Pharmacy to Columbus was incredible. We find Klein's argument unavailing.

**{¶57}** Initially, we note that Klein did not object to the statements she now alleges to constitute prosecutorial misconduct. Consequently, Klein has waived all but plain error. *State v. White*, 82 Ohio St.3d 16, 22 (1998), citing *State v. Slagle*, 65 Ohio St.3d 597, 604 (1992).

**{¶58}** In order to have plain error under Crim.R. 52(B), there must be an error, the error must be an "obvious" defect in the trial proceedings, and the error must have affected "substantial rights." *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Plain error is to be used "with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *Id*. Accordingly, plain error exists only in the event that it can be said that "but for the error, the outcome of the trial would clearly have been otherwise." *State v. Biros*, 78 Ohio St.3d 426, 431 (1997).

**{¶59}** In closing arguments, prosecutors are entitled to some latitude regarding what the evidence has shown and the inferences that can be drawn. *State v. Ballew*, 76 Ohio St.3d 244, 255 (1996). "'It is improper for an attorney to express his or her personal belief or opinion as to the credibility of a witness or as to the guilt of the accused.'" *State v. Van Meter*, 130 Ohio App.3d 592, 601 (3d

Dist. 1998), quoting *State v. Williams*, 79 Ohio St.3d 1, 12 (1997). However, "[a] prosecutor may state his opinion if it is based on the evidence presented at trial." *State v. Watson*, 61 Ohio St.3d 1, 10 (1997) abrogated on other grounds by *State v. McGuire*, 80 Ohio St.3d 390 (1997).

**{¶60}** The test for prosecutorial misconduct during closing argument is whether the remarks made by the prosecutor were improper and, if so, whether they prejudicially affected a substantial right of the accused. *State v. Siefer*, 3d Dist. No. 5-09-24, 2011-Ohio-1868, ¶ 46, citing *White*, 82 Ohio St.3d at 22. We evaluate the allegedly improper statements in the context of the entire trial. S*tate v. Treesh*, 90 Ohio St.3d 460, 464 (2001), citing *State v. Keenan*, 66 Ohio St.3d 402, 410 (1993). An improper comment does not affect a substantial right of the accused if it is clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments. *Id*., citing *State v. Smith*, 14 Ohio St.3d 13, 15, (1984).

**{¶61}** During its closing argument, the prosecutor addressed Klein's route out of Marysville, stating the following:

> And then what did she do? And this is her testimony, Tammy M. Klein. She went to the end of Sixth to Grove Street. She turned right and she went out onto Fifth. Now, I can tell you, you know. You live in this town. It's going towards Krogers, but you can turn right and come back on Fifth, angle off onto Fourth, and then back on Maple which is quicker when you're going where? You're going east. You're going to Columbus. We didn't go that way. We went further west. What did we do? We drove further away from the area

that the crime was committed in. Fleeing the area. You will have an instruction on that. In your jury instructions, it talks about conduct of leaving the scene, leaving the area. She was the driver. Okay. I think the excuse I got was it was rush hour traffic. Excuse me. I've lived in the city. I know what rush hour traffic is. Don't give me - - you know what goes on in this town. Is it going to slow you down that much? And realistically, I go down Maple every day. Come out, jump onto what I consider to be 31, and I go home. I know how long it takes me to go that way. If it was better for me, what? I would go clear out past Krogers? It isn't going to happen cause I'm going north. But north is further east than going west to where she went. So think about the conduct of this defendant under those circumstances. Trial Tr., Vol. II, p. 117-18.

{¶62} Klein argues that the prosecutor's statement concerning his knowledge of rush hour traffic in Marysville was improper. We agree. The record contains no evidence which would permit the prosecutor to comment on his personal knowledge of rush hour traffic in Marysville. Despite the impropriety of the prosecutor's statement, we "must consider the effect of the conduct on the jury in the context of the entire trial and determine if the remarks actually prejudiced the substantial rights of the defendant." *State v. Rollison*, 3d Dist. No. 9-09-51, 2010-Ohio-2162, ¶ 48; *White*, 82 Ohio St.3d at 22.

{¶63} The improper statement concerning rush hour traffic in Marysville was not the only means by which the prosecutor attempted to challenge the veracity of Klein's explanation concerning her route from Dave's Pharmacy to Columbus. Before improperly discussing rush hour traffic in Marysville, the prosecutor addressed the details of Klein's route away from Dave's Pharmacy.

This segment of the prosecutor's closing argument was based on evidence presented at trial, particularly Klein's own testimony. When viewing this segment in its entirety, we find that it, like the prosecutor's improper statement concerning rush hour traffic, challenges the veracity of Klein's explanation concerning her route from Dave's Pharmacy to Columbus. In particular, it highlights Klein's choice to proceed west from Dave's Pharmacy, when her intended destination, Columbus, required her to drive southeast. Hence, the prosecutor did appropriately challenge the veracity of Klein's explanation concerning her route from Dave's Pharmacy to Columbus.

{¶64} In light of the foregoing, and the cursory nature of the improper statement, we find, beyond a reasonable doubt, that the jury would have found Klein guilty even without the improper statement.

{¶65} Accordingly, we overrule Klein's third assignment of error.

*Assignment of Error No. I*

{¶66} In her first assignment of error, Klein contends that she received ineffective assistance of counsel. Specifically, Klein argues that trial counsel was ineffective in two respects. First, trial counsel was ineffective because he did not attempt to suppress or otherwise object to the introduction of her interview with law enforcement. Second, trial counsel was ineffective because he did not take

reasonable measures to secure her or Freed's phone records from the day of the robbery. We find Klein's argument's unavailing.

**{¶67}** An ineffective assistance of counsel claim requires proof that trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of syllabus. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial would have been different. *Id*. at paragraph three of syllabus. "Reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. *State v. Waddy*, 63 Ohio St.3d 424, 433 (1992), superseded by constitutional amendment on other grounds as recognized by *Smith*, 80 Ohio St.3d at 103.

**{¶68}** Furthermore, the court must look to the totality of the circumstances and not isolated instances of an allegedly deficient performance. *State v. Malone*, 2d Dist. No. 10564 (Dec. 13, 1989). "Ineffective assistance does not exist merely because counsel failed 'to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it.'" *Id*., quoting *Smith v. Murray*, 477 U.S. 527, 535, 106 S.Ct. 2661 (1986).

*Klein's Videotaped Interview with Law Enforcement*

**{¶69}** First, Klein contends that trial counsel was ineffective because he made no attempt to prohibit the introduction of her videotaped interview with Detective McGlenn, or redact those portions of the video which were prejudicial to her case. Klein asserts that the video was rife with prejudicial information. Specifically, Klein cites to those portions of the video where she discussed her prior drug use, where Detective McGlenn stated that she has been under surveillance in the past, and where Detective McGlenn offered his opinion that she knew about the robbery before it occurred. Though we agree with certain aspects of Klein's argument, we ultimately find her claim of ineffective assistance unavailing.

**{¶70}** During the defense's case-in-chief, Klein testified that she was interviewed by Detective McGlenn in September 2011, and that her testimony was consistent with the information she provided Detective McGlenn during the interview. On cross-examination, the State introduced the video of Klein's interview with Detective McGlenn. The State represented that it sought to introduce the video to demonstrate what it perceived to be inconsistencies between the information Klein provided Detective McGlenn and her testimony at trial. Klein's trial counsel stated that he had no objection to the video, and the same was played for the jury.

**{¶71}** The interview lasted approximately 30 minutes. Much of the interview focused on the robbery, the events surrounding the robbery, and Klein's version of events. However, interspersed throughout the interview were several cursory discussions about Klein's prior drug abuse. Also, as Klein indicates, there was one instance where Detective McGlenn stated that Klein had been under surveillance in the past, and one instance where Detective McGlenn offered his opinion that Klein knew about the robbery before it occurred.

**{¶72}** After the video was played for the jury, the trial court immediately administered the following limiting instruction to the jury.

> Ladies and gentlemen, before we go any further, the Court has a commentary that I need you to observe with regard - - an instruction that I need you to observe with regard to the videotape that you just watched. The videotape that you just watched included the defendant's admission and Detective McGlenn's discussion in addition to the admission of other acts committed by the defendant. Other acts, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action and conformity therewith. So you can't use these other acts that she's talked about. And you can't consider those other acts when you're determining whether or not she's guilty or not guilty of the crimes that she's charged with when you go into your deliberations. This is called - - what this is called that I'm giving you is a limiting instruction so that you've got this in your mind. The other acts may be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. But they're not admissible to prove the character of the defendant in this case in order to show action and conformity therewith. In other words, you can't say because she was using heroin or because she said that she sold pills in the past, that therefore she did the acts there (sic) are in question. Everybody understand that? So you can't consider the other acts that were

talked about for that purpose. You have to - - you have to look at the evidence that was brought before the Court in this case alone as to whether - - and decide whether or not she's guilty or not guilty of the acts that were committed, or that acts there (sic) are alleged, I'm sorry, that she committed. So these other acts things, highly prejudicial in terms of being in your mind. Well, she used heroin so she must have done this. You can't make that conclusion. You can't make that jump. Do you all understand that? Thank you. Trial Tr., Vol. II, p. 74-76.

**{¶73}** Generally, a claim for ineffective assistance of counsel will not succeed if the evidence at issue is admissible. *See State v. May*, 3d Dist. No. 8-11-19, 2012-Ohio-5128, ¶ 92, (finding no ineffective assistance of counsel where the trial counsel did not object to admissible evidence); *see also State v. Dubose*, 7th Dist. No. 00-C.A.-60, 2002-Ohio-6613, ¶ 12-13 (same). Here, a majority of the video was admissible, since it contained information relevant to the charged offenses, and demonstrated, as the State represented, inconsistencies between the information Klein provided Detective McGlenn and her testimony at trial. Accordingly, we find that trial counsel was not ineffective when he failed to object to the entire video being admitted into evidence.

**{¶74}** Trial counsel's performance presents a closer call with respect to Klein's argument that he should have made some effort to redact those portions of the video which she claims were prejudicial. Contrary to Klein's assertions on appeal, we find that trial counsel's performance did not fall below objective standards of reasonable representation when he failed to object to those portions of

the video wherein Klein discussed her prior drug abuse and Detective McGlenn stated his opinion that she knew about the robbery before it occurred. As for Klein's discussion of her prior drug abuse, evidence of the same was introduced during Freed's and Klein's testimony. As such, we cannot conclude that trial counsel was ineffective when he made no attempt to redact those portions of the video in which Klein discussed her prior drug abuse. Similarly, we cannot conclude that trial counsel was ineffective when he made no attempt to redact Detective McGlenn's opinion. Though it may have been prudent to redact that portion of the video, Detective McGlenn clearly stated that the opinion was his alone and that he could be wrong. Given these qualifying remarks and the overall context of the interview, we are not convinced that trial counsel's failure to redact that portion fell below objective standards of reasonable representation.

**{¶75}** As for Detective McGlenn's statement that Klein had been under surveillance in the past, we agree that trial counsel should have attempted to redact that portion and that failure to do so fell below objective standards of reasonable representation. Detective McGlenn's statement concerning his surveillance of Klein had no relevance to the charged offenses and was prejudicial, as it suggested that Klein has long had a propensity to commit crimes or associate with others who commit crimes.

{¶76} Despite the foregoing, and considering the totality of the circumstances, we are not convinced that, but for trial counsel's error, the outcome at trial would have been different. The trial court gave a detailed limiting instruction immediately after the video was played, which we must presume the jury followed. *Pang v. Minch*, 53 Ohio St.3d 186, 195 (1990). We find that the limiting instruction sufficiently mitigated any probability that Klein was prejudiced by the playing and subsequent introduction of the entire video of her interview with Detective McGlenn.

{¶77} Klein cites to *State v. Main*, 5th Dist. No. 9562 (Aug. 22, 1994), in support of her contention that trial counsel was ineffective when he did not attempt to suppress or otherwise object to the introduction of her interview with Detective McGlenn. However, a review of *Main* reveals that it is inapposite to this matter. In *Main*, the defendant challenged the admission of his tape recorded interview with law enforcement. The reviewing court described the interview as follows:

> The tape is not a statement by Appellant *per se*, but rather is a dialogue between officers and Appellant in which the officers accuse Appellant of lying to them, of striking Kimberly George, and otherwise advance various investigative theories of their own. The tape also contains a certain amount of discussion regarding whether or not Appellant will take a polygraph test to convince the officers of his innocence. (Emphasis sic.) *Id*.

Upon comparison, we find that the tape recorded interview in *Main* and Klein's interview are manifestly different. Unlike the interview in *Main*, much of Klein's interview focused on her version of events surrounding the robbery. At no point during Klein's interview did it appear that Detective McGlenn was employing the brash and manipulative tactics that appeared to be pervasive throughout the interview in *Main*. Given these manifest differences, we decline to follow *Main* in this case.

{¶78} Klein also relies on *State v. Bankston*, 2d Dist. No. 24192, 2011-Ohio-6486. However, a review of *Bankston* reveals that it too is inapposite to this matter. In *Bankston*, the defendant, who was charged with domestic violence, challenged the admission of two conversations that were recorded while he was in jail awaiting trial. The reviewing court determined that it was error for both recorded conversations to be played in their entirety during trial. In so finding, the court stated that only a brief portion of each conversation was necessary to demonstrate the inconsistencies the state alleged to exist, and that the remaining content was either irrelevant or prejudicial. The court also noted that more of the conversations could have been played for the jury if it was needed for "context or completeness," but concluded that such a need was not present under the circumstances of the matter. *Bankston* at ¶ 13. Unlike the conversations in *Bankston*, much of Klein's interview was not filled with prejudicial or irrelevant

-40-

information, but rather information that was otherwise admissible. While playing Klein's interview in its entirety was in some respects cumulative, it was acceptable since it gave context to Klein's inconsistent statements which were scattered throughout the video. Given these manifest differences, we decline to follow *Bankston* in this case.

{¶79} In sum, we find that trial counsel was not ineffective when he did not attempt to suppress or otherwise object to the introduction of her interview with Detective McGlenn.

*Phone Records*

{¶80} Next, Klein contends that trial counsel was ineffective when he failed to obtain either her or Freed's phone records from the day of the robbery. Klein argues that the phone records were essential to proving her case, as they would have corroborated her version of events and impeached Freed's testimony that she did not have a phone on her person at the time of the robbery. We find Klein's argument unavailing.

{¶81} During trial, Detective McGlenn was questioned about the phone records, resulting in the following exchange:

> Q: After you interviewed Miss Klein and she indicated that she had received this phone call, did you happen to look at her phone records or Miss Freed's phone records to see if that actually occurred?

> A:   This - - this information came about 18 months after the fact and when we attempted to get the phone records, there was an issue with the time of being able to get those records.
>
> Q:   So you weren't able to look - -
>
> A:   I was not able to obtain those records.  Trial Tr., Vol. II, p. 20.

Similarly, Timothy Sr. testified that, at the behest of trial counsel, he attempted to secure the phone records a couple of weeks before trial, but explained that "[he] couldn't." *Id.* at p. 56.

**{¶82}** As the record stands, we cannot conclude that trial counsel was ineffective.  According to Detective McGlenn, he attempted, but was unable, to obtain the phone records during his investigation in September 2011.  Likewise, Timothy Sr. was unable to obtain the phone records.  In light of this evidence, we can only conclude that the phone records were unavailable, and consequently any effort by trial counsel to obtain the phone records would have been unsuccessful.  Accordingly, we cannot conclude that trial counsel was ineffective when he failed to obtain the phone records from the day of the robbery.

**{¶83}** In sum, we find that trial counsel was not ineffective when he failed to challenge the introduction of the video depicting Klein's interview with Detective McGlenn, or when he failed to obtain Klein's or Freed's phone records from the day of the robbery.

**{¶84}** Accordingly, we overrule Klein's first assignment of error.

*Assignment of Error No. V*

**{¶85}** In her fifth assignment of error, Klein contends that the trial court erred when it sentenced her to consecutive sentences. We find Klein's argument unavailing.

**{¶86}** A reviewing court must conduct a meaningful review of the trial court's imposed sentence. *State v. Daughenbaugh*, 3d Dist. No. 16-07-07, 2007-Ohio-5774, ¶ 8. Such review allows the court to "modify or vacate the sentence and remand the matter to the trial court for re-sentencing if the court clearly and convincingly finds that the record does not support the sentence or that the sentence is otherwise contrary to law." *Id.* Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. An appellate court should not, however, substitute its judgment for that of the trial court because the trial court is "'clearly in the better position to judge the defendant's likelihood of recidivism and to ascertain the effect of the crimes on the victims.'" *State v. Watkins*, 3d Dist. No. 2-04-08, 2004-Ohio-4809, ¶ 16.

**{¶87}** Where consecutive sentences are not mandated by statute, the trial court must consider R.C. 2929.14(C)(4) before it can order sentences to be served consecutively. R.C. 2929.14(C)(4) provides:

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

While the trial court is required to make specific findings before imposing consecutive sentences pursuant to R.C. 2929.14(C)(4), *State v. Hites*, 3d Dist. No. 6-11-07, 2012-Ohio-1892, ¶ 11, it is not required to give its reasons for imposing consecutive sentences. *State v. McKenzie*, 3d Dist. No. 15-12-07, 2012-Ohio-6117, ¶ 10, citing *State v. Frasca*, 11th Dist. No. 2011-T-0108, 2012-Ohio-3746, ¶ 57.

{¶88} Upon review, we find that the trial court made the requisite findings under R.C. 2929.14(C)(4). At the sentencing hearing, the trial court stated that it considered, among other things, "the record, the oral statements, [and] the presentence investigation * * * [.]" Sentencing Hearing Tr., p. 21. Thereafter, the court stated the following regarding the imposition of consecutive sentences.

> The Court further finds that consecutive sentences are necessary to protect the public from future crime and to punish the defendant. And further, that consecutive sentences are not just disproportionate to the seriousness of the defendant's conduct and to the danger that the defendant poses to the public. The Court further finds at least two of the multiple offenses that were committed, were committed as part of one or more causes - - courses of conduct. And that the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of your conduct. *Id*.

The same findings were included in the trial court's judgment entry of sentencing. Given the trial court's consideration of the record, oral statements, presentence investigation, its findings under R.C. 2929.14(C)(4), and our independent review of the record, we find that the trial court's imposition of consecutive sentences was not clearly and convincing unsupported by the record or contrary to law.

{¶89} Accordingly, we overrule Klein's fifth assignment of error.

{¶90} In addition to Klein's assignments of error, we, sua sponte, address plain error with respect to the verdict form for Count Two, complicity to commit theft. Since Klein did not object to the verdict form for Count Two, she has

forfeited all but plain error. *State v. Eafford*, 132 Ohio St.3d 159, 2012-Ohio-2224, ¶ 11.

{¶91} R.C. 2945.75 provides, in relevant part:

(A)  When the presence of one or more additional elements makes an offense one of more serious degree:

* * *

(2)  A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged.

{¶92} In its first decision addressing the effect of not complying with R.C. 2945.75(A)(2), the Ohio Supreme Court held that "that pursuant to the clear language of R.C. 2945.75, a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense." *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, ¶ 14.  The court reasoned that "[t]he express requirement of [R.C. 2945.75] cannot be fulfilled by demonstrating additional circumstances, such as that the verdict incorporates the language of the indictment, or by presenting evidence to show the presence of the aggravated element at trial or the incorporation of the indictment into the verdict form, or by showing that the defendant failed to raise the issue of the inadequacy of the verdict form." *Id*.

{¶93} In a more recent decision, the court, faced with a similar issue, appeared to change its position on the effect of not complying with R.C. 2945.75(A)(2). *Eafford*, 132 Ohio St.3d 159, 2012-Ohio-2224. Applying a plain error standard of review, the majority, looking at the totality of the record, in particular the indictment, the evidence presented at trial, and the jury instructions determined that the failure to include either the degree of the offense or a finding concerning the aggravating element in the verdict form did not constitute plain error. *Id*. at ¶ 18. The majority reasoned that even if the trial court complied with R.C. 2945.75(A)(2) the outcome of the trial would not have been different. *Id*.

{¶94} Although the court's decisions in *Pelfrey* and *Eafford* apparently contradict each other, the *Eafford* Court did not expressly overrule *Pelfrey*. As such, this court has recently determined that "in light of *Eafford*'s silence and our strict interpretation of R.C. 2945.75(A)(2) as required by R.C. 2901.04(A) and *Pelfrey*, we find that *Pelfrey* controls" in cases where the verdict form is insufficient under R.C. 2945.75(A)(2). *State v. Gregory*, 3d Dist. No. 16-12-02, 2013-Ohio-853, ¶ 18.

{¶95} As previously mentioned, Klein was charged with complicity to commit theft of a dangerous drug in violation of R.C. 2913.02(A)(4), (B)(6), a felony of the fourth degree. For a theft offense to constitute a fourth degree felony under R.C. 2913.02(B)(6), the jury must make an additional finding that "the

property stolen is any dangerous drug[.]" Without this finding, the defendant's theft offense constitutes a first degree misdemeanor.[8] R.C. 2913.02(B)(2).

**{¶96}** While the trial court properly instructed the jury that it had to find that the stolen property was a dangerous drug in order to convict Klein of a fourth degree felony theft offense, this fact, under *Pelfrey*, does not excuse the failure to comply with R.C. 2945.75(A)(2). *Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, at ¶ 14. The verdict form here reads:

> We, the jury, being duly impaneled and sworn, find the Defendant, Tammy M. Klein <u>guilty</u> of the charge of Theft in violation of Ohio Revised Code Section 2913.02(A)(4). (Docket No. 47).

Clearly, the verdict form does not include either the degree of the offense (i.e., a fourth degree felony) or the aggravating element (i.e., that the property stolen was a dangerous drug), as required by R.C. 2945.75(A)(2). Under *Pelfrey*, the verdict form is insufficient to convict Klein of a fourth degree felony, and we consequently find the failure to comply with R.C. 2945.75(A)(2) results in plain error. *See Gregory*, 2013-Ohio-853, ¶ 21 (finding plain error where verdict form did not contain degree of offense or a finding concerning the aggravating element).

**{¶97}** Having found no error prejudicial to Klein, in the particulars assigned and argued, but having found plain error with respect to the verdict form

---

[8] Based on the evidence at trial, the value of the stolen OxyContin was $480.00. Accordingly, at the time the offense occurred, Klein would have been guilty of petty theft, a misdemeanor of the first degree. R.C. 2913.02(B)(2).

Case No. 14-12-09

for Count Two, we affirm in part, and reverse in part, and remand the matter for the trial court to enter a judgment convicting Klein of complicity to commit theft as a first degree misdemeanor, pursuant to R.C. 2913.02(A)(4), (B)(2).

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**PRESTON, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**